John F. MEADOWS, et al., Plaintiffs,

v.

BICRODYNE CORP., et al., Defendants.

No. C–82–4975–WWS.

United States District Court,
N.D. California.

Nov. 1, 1983.

James F. Thacher, Lance S. Stryker, Thacher, Jones, Casey & Ratcliff, San Francisco, Cal., Robert W. Rychlik, Los Altos, Cal., for plaintiffs.

John M. Anderson, Richard D. Warren, Amy Slater, Landels, Ripley & Diamond, San Francisco, Cal., for defendants.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

The parties to this appraisal action have submitted for decision the issue whether nine of the named plaintiffs are qualified to exercise their appraisal rights as dissenting

shareholders of Bicrodyne Corporation. They agree that this question may be decided by the Court on the present record without a hearing. Based on a review of the record and the controlling California statutes, the Court concludes that the nine plaintiffs whose right to appraisal is in issue have not qualified for appraisal rights.

### The Controlling Law

■ Under section 1300(a) of the California Corporations Code, a shareholder of a "disappearing corporation" in a short-form merger "may, by complying with [the statute], require the corporation ... to purchase for cash at their fair market value the shares owned by the shareholder." The statutory requirements are set forth in sections 1301 and 1302. None of the nine plaintiffs whose appraisal rights have been challenged by defendant complied with those requirements; their noncompliance is undisputed. These plaintiffs contend that they were unable to comply with the statutory provisions governing perfection of their appraisal rights because they did not receive the statutory notice in time or, in some instances, at all. The issue here, which is one of first impression, is whether failure to receive timely notice excuses a shareholder's failure to comply with the statute.

Bicrodyne was merged into Carpenter Technology Corporation pursuant to section 1110 of the California Corporations Code, which sets forth the procedures required to effect a short-form merger. Section 1110(i) provides that where, as was true of Bicrodyne, not all of the outstanding shares of the subsidiary domestic corporation party to a short-form merger are owned by the parent corporation immediately prior to the merger, the parent corporation "shall at least 10 days before the effective date of the merger, give notice to each shareholder of [the] subsidiary corporation" of the effective date of the merger. It further states that "[t]he notice shall be sent by mail addressed to the shareholder at the address of such shareholder as it appears on the records of the corporation." *Cal.Corp.Code* § 1110(i) (West 1983) Defendant contends that it discharged its statutory obligation to give notice of the merger to shareholders by depositing the notices of merger in the mail. It argues that once the corporation has discharged its statutory obligation, the shareholders' failure to receive the notice does not excuse their non-compliance with sections 1301 and 1302, which outline the procedures shareholders must follow to perfect their appraisal rights. The assumption implicit in defendant's argument is that only a failure on the part of the corporation to fulfill its statutory obligation to give proper notice relieves the shareholder from the obligation to comply with sections 1301 and 1302. Defendant relies on section 601 of the Corporations Code, and the language of sections 1301 and 1302 to support its position.

Section 601 of the Corporations Code outlines the procedures a corporation must follow to give notice of a shareholders' meeting:

> [n]otice of a shareholders' meeting or any report shall be given either personally or by first class mail .... addressed to the address of such shareholder appearing on the books of the corporation or given by the shareholder to the corporation for the purpose of notice .... *[t]he notice or report shall be deemed to have been given at the time when delivered personally or deposited in the mail or sent by other means of written communication.* An affidavit of mailing of any notice or report in accordance with the provisions of this division, executed by ... any transfer agent, shall be prima facie evidence of the giving of the notice or report. (Emphasis added).

This section establishes that a corporation has discharged its obligation to give notice of a shareholders' meeting or report when it deposits into the mail the appropriate, properly addressed notice. Although the section on its face is limited to notices of meetings and reports, there is no reason not to apply its underlying rationale to notices of merger. There is no other or different provision in the sections relating

to mergers. The purpose of the notice of merger is similar to the purpose of giving notice of a shareholders' meeting: to allow each shareholder to evaluate his or her response to actions which the corporation may take. And the same policy applies to both notice of shareholder meetings and notice of mergers, i.e., to lay down an objective rule which establishes the relevant time periods with certainty, thereby eliminating disputes such as that now before the Court.

Sections 1301 and 1302 are consistent with that analysis. Section 1301 provides that any shareholder who has a right to require the corporation to purchase his or her shares "shall make written demand upon the corporation for the purchase of such shares .... the demand is not effective for any purpose unless it is received by the corporation or any transfer agent thereof ... within 30 days *after the date on which the notice pursuant to subdivision (i) of section 1110 was mailed* to the shareholder (emphasis added)." Section 1302 also provides that in order to perfect appraisal rights the shareholder's certificates must be submitted to the corporation or to its transfer agent *within 30 days of the mailing of the merger notice* (emphasis added). Both sections require communication of dissent within 30 days of mailing, not receipt of notice. If the date of receipt of notice had been considered material by the legislature, the language used in the statute would presumably not have been chosen. By adopting this language, the legislature appears to have balanced the interests of majority and minority shareholders: imposing a duty promptly to notify shareholders while protecting the majority against late claims asserted after the merger has been consummated.

Defendant has cited case authority to support this position; plaintiffs have cited none to contradict the defendant's theory. However, the cases cited by defendant involve the insufficiency of the shareholders' communication of dissent, not the sufficiency of the steps taken by the corporation to provide shareholders with adequate notice. See *National Supply Co. v. Leland Stanford Jr. University*, 134 F.2d 689 (9th Cir.), cert. denied, 320 U.S. 773, 64 S.Ct. 77, 88 L.Ed. 462 (1943); *Raab v. Villager Industries, Inc.*, 355 A.2d 888 (Del.), cert. denied, 429 U.S. 853, 97 S.Ct. 147, 50 L.Ed.2d 129 (1976); *Carl M. Loeb, Rhoades & Co. v. Hilton Hotels Corp.*, 43 Del.Ch. 206, 222 A.2d 789 (1966). Although their focus is on the sufficiency of the shareholder's communication, these cases, which involve statutes similar to the one at issue here, reflect strict adherence to the time provisions for receipt of communications. Research of other jurisdictions has failed to reveal any case authority on the obligation of a corporation to give notice of merger to shareholders.

In the absence of contrary authority, and in light of the language and policy of the sections of the Corporations Code previously discussed, the Court concludes that notice properly addressed and timely sent by the corporation discharges its obligation under section 1110(i) and places the risk of non-compliance on the shareholders.

### The Record

To place the risk of non-compliance with the code sections governing perfection of appraisal rights on Bicrodyne shareholders, the record must show that defendant or its transfer agent UCB mailed notice of the proposed merger not less than 10 days before the effective date of the merger to all record owners of common stock at the address listed on the books of the corporation.

It is not disputed that on July 1, 1977, United California Bank (UCB) acting as transfer agent for Bicrodyne mailed notices of a proposed merger which was to become effective September 1, 1977. Defendant has presented the following evidence to support its claim that this notice was sent to all record owners of common stock.

Carmel Tully, a supervisor in the Corporate Trust Department of UCB at the time of the merger, executed an affidavit of mailing on July 12, 1977, in which she states that the notice of merger was mailed

to each shareholder of record at the address appearing on the books of the corporation (Exhibit 2, Affidavit of Mailing, July 12, 1977). Tully also executed a declaration detailing the preparation and mailing of the notices (Exhibit 3, Declaration of Carmel Tully, September 16, 1983). In this declaration, Tully states that the secretary of Bicrodyne gave her a list containing the names and addresses of all Bicrodyne shareholders. This list was used to prepare a working list from which the address labels for the notices were to be typed. She further states "[a]fter the envelopes [containing the merger notices] were addressed, stuffed and sealed, they were counted and the addresses again compared to the addresses on the lists" (Exhibit 3, Declaration of Carmel Tully, September 16, 1983, p. 2–3).

The declaration of Marion Brown, secretary of Bicrodyne, states that "[o]n or about June 22, 1977, I gave true, correct and up-to-date lists of the Bicrodyne shareholders' names and addresses to Carmel Tully, Trust Officer at United California Bank" (Exhibit 4, Declaration of Marion Brown, September 16, 1983, p. 2). Defendant has also submitted a copy of the Bicrodyne shareholders list given Tully (Exhibit 4), and a copy of the UCB working list prepared from the Bicrodyne list (Exhibit 3). The UCB list correctly reflects the Bicrodyne list with certain address changes authorized by Bicrodyne (Exhibit 4, Declaration of Marion Brown, September 16, 1983, ¶ 7, and attached letter to Carmel Tully, June 28, 1977, notifying Ms. Tully of address changes). Defendant has also submitted copies of envelopes containing notices of merger which were returned as undeliverable; each of these envelopes bears a July 1 mailing date (see Exhibit 3).

Plaintiffs have submitted no evidence which directly rebuts or discredits any of the evidence discussed above. Instead, plaintiffs have relied on their own late or nonreceipt of the notice to rebut evidence of mailing. They have also introduced the following evidence which shows that on July 26, 1977, UCB was holding notices of merger for certain shareholders, including some of the plaintiffs in this action. In his declaration, plaintiff Paul Reyff states "[t]he woman in charge stated to me that the United California Bank Trust Department had then in its possession a considerable number of notices of merger for various stockholders." (Exhibit 8, Declaration of Paul Reyff, October 25, 1978, p. 1; *see also* Deposition of Paul Reyff, October 22, 1980). In his declaration, John Meadows states that Reyff called him on July 26, and told him that UCB was holding a notice of merger for him, too (Exhibit 8, Declaration of John Meadows, October 13, 1978, p. 1).

Although plaintiffs have presented circumstantial evidence that notices were not mailed to all shareholders July 1, 1977, that evidence is not sufficient to overcome that presented by defendant. Defendant's uncontradicted evidence shows a July 1, 1977, mailing to all shareholders. However, for defendant to have discharged its obligation under § 1110(i), the record must also show that the notices mailed July 1, 1977, were properly addressed (see discussion *supra* at pp. 5–6). Defendant has submitted copies of the lists UCB used to prepare the address labels for the notices of merger. Plaintiffs do not dispute that these lists are accurate copies of the lists actually used by UCB. These lists must be examined with respect to each plaintiff to determine whether his or her notice was sent to the proper address. Where the notice was sent to an incorrect address, as it was for two of the nine plaintiffs here, the Court must determine which party is responsible for the error, the shareholder or the corporation.

## JOHN F. AND KAREN MEADOWS

■ The lists submitted by defendant show two different addresses for the Meadows, thereby raising a question as to which of these addresses their notice was sent to. The Bicrodyne shareholder list shows their address as 115 Fairfield Place, Moraga; the working list prepared by UCB gives their address as 105 The Uplands, Berkeley (see Exhibits 3 and 4). Meadows's deposi-

tion testimony indicates that their correct address at the time of the mailing was Berkeley (see Deposition of John F. Meadows, November 17, 1980; *see also* Exhibit 6, Response of Plaintiffs to Defendants' First Set of Interrogatories, p. 3). Defendant has presented the following evidence to support its claim that the notice was mailed to the Moraga address, and the Berkeley address added after the July 1, 1977, mailing.

Not only is the Berkeley address not shown on the shareholder list Bicrodyne submitted to UCB, the Meadows' new address does not appear in Brown's June 28, 1977, letter to Tully notifying her of recent address changes for several shareholders (Exhibit 4). The Berkeley address on the UCB list is in a different typeface from the other addresses on that page of the list and has different spacing. In her declaration, Tully states she recognizes the typeface as that of a UCB typewriter; she also states she believes these facts indicate that the Berkeley address was typed over the old Moraga address (Exhibit 3, Declaration of Carmel Tully, September 16, 1983, p. 3). In addition to this evidence, there is a notation of "returned" next to the Meadows' name on the UCB list. In her declaration, Tully remarks that this notation was used when a notice of merger had been returned as undeliverable (Exhibit 3, Declaration of Carmel Tully, September 16, 1983, p. 4). Meadows also states that he called UCB on July 26, 1977, to make arrangements for delivery of his notice of merger. However, he did not remember giving UCB his Berkeley address. (Deposition of John F. Meadows, November 17, 1980).

On this uncontradicted evidence, the Court finds that notice was sent to Meadows at the Moraga address appearing on the records of the corporation, returned as undeliverable, and remained at the bank until Meadows telephoned UCB to make arrangements for its delivery. At the time delivery arrangements were made, UCB corrected the Meadows' address.

Although it is clear that the Moraga address was incorrect, defendant contends that the Moraga address was the only known address for the Meadows at the time of the mailing. Defendant has submitted the following evidence to support this claim.

In his declaration, Marion Brown, secretary of Bicrodyne, states that duplicate lists of shareholders were maintained, one by himself, and the second by the controller of the corporation. Each custodian would keep the other informed of changes in shareholders' addresses (Exhibit 4, Declaration of Marion Brown, September 16, 1983, p. 1 and 2). Defendant has also cited the Declaration of Edward Kurz, who was custodian of one of the lists during the time periods relevant here. Kurz states that one of his responsibilities was to maintain accurate records of shareholder names and addresses. All notices of shareholder address changes were forwarded to him; he would change his records, and notify Brown of the change (Exhibit 9, Declaration of Edward Kurz, March 4, 1983, p. 2–3). Before Bicrodyne sent UCB a list of shareholder addresses, Kurz states that he compared his list with Brown's to make sure the list sent to UCB was complete and accurate (Id.). Defendant has also submitted copies of letters giving changes of addresses for other shareholders. For example, defendant has submitted a copy of a postcard from Paul Reyff notifying Bicrodyne of his change of address. There is also Kurz's handwritten notation of an address change for Dale De Beauclair, along with a typewritten letter to Brown informing him of De Beauclair's change of address (Declaration of Edward Kurz, February 8, 1983, attachments). Both the Bicrodyne and UCB lists reflect these changes (see Exhibits 3 & 4). However, there is no evidence to indicate Bicrodyne had received a change of address for the Meadows before July 1, 1977.

The only evidence that the Meadows notified Bicrodyne of an address change is a statement made during discovery by the plaintiffs' attorney on behalf of the Meadows: "they [the Meadows] believe they did send Bicrodyne a notice of change of ad-

dress from Moraga to Berkeley." (Exhibit 6, Response of Plaintiffs to Defendants' First Set of Interrogatories, p. 2, September 23, 1979). In light of the totality of the evidence, this statement is not a sufficient basis upon which to conclude that the Meadows sent Bicrodyne an address change before July 1, 1977.

The evidence submitted by defendant indicates that Bicrodyne had an effective system for processing address changes. The fact that Bicrodyne had no record of a change of address for the Meadows, combined with the absence of any evidence that the Meadows notified Bicrodyne of an address change, compels the conclusion that no address change was sent by the Meadows. Thus Bicrodyne has sustained its burden of showing that it notified the Meadows of the proposed merger by depositing notice in the mail to their address of record as required by the statute. The risk of non-receipt rests on the Meadows and they may not assert their appraisal rights in this action.

### ALAN PAUL DE BEAUCLAIR

The address for Alan Paul De Beauclair shown on both the Bicrodyne shareholder list and the UCB working list is 3146 Middlefield Road, Palo Alto. Defendant has submitted a copy of an envelope for a notice of merger addressed to Alan Paul De Beauclair which shows a postmark of July 1, 1977; the notice, addressed to 3146 Middlefield Road, was returned as undeliverable (Exhibit 3).

Bicrodyne has no evidence of an address change for Alan Paul De Beauclair. As previously discussed, Bicrodyne's record-keeping procedures have been found to be sufficient (see discussion in John F. and Karen Meadows, *supra* at pp. 10–11). Moreover, the only evidence that Alan Paul De Beauclair notified Bicrodyne of a change in his address is Dale De Beauclair's general statement "... my brother [and I] ... have kept Bicrodyne informed in writing of our actual addresses." (Exhibit 12, Declaration of Dale De Beauclair, October 26, 1978, p. 1). There is evidence

of an address change for Dale De Beauclair: attached to Edward Kurz' declaration is a letter from Kurz to Brown dated November 1, 1976, noting an address change for Dale De Beauclair. There is also a copy of a handwritten note showing an address for Dale, which is the new address (Declaration of Edward Kurz, February 8, 1983, attachments). Neither of these communications indicate that the change is to be effective for Alan. There is insufficient evidence to support a finding that Bicrodyne was notified of an address change for Alan De Beauclair. Because the corporation fulfilled its obligation by mailing notice to him at his address of record, he may not assert his appraisal rights in this action.

### ALBERT REYFF

The address for Albert Reyff shown on both the Bicrodyne shareholder list and the UCB working list is 231 Crestmont Drive, San Francisco. In deposition testimony, Reyff stated that this was his correct address at the time of the mailing. (Exhibit 7, Deposition Testimony of Albert Reyff, September 8, 1982, p. 29). There is no evidence his notice of merger was returned as undeliverable.

### PAUL REYFF

The address for Paul Reyff shown on both the Bicrodyne shareholder list and the UCB working list is 210 Atherton Avenue, Atherton. In his deposition testimony, Paul Reyff has stated that this address was correct at the time of the mailing (Exhibit 8, Deposition Testimony of Paul Reyff, August 31, 1982, p. 190). There is no evidence his notice of merger was returned as undeliverable.

### ROBERT K. HALL

The address for Robert Hall shown on both the Bicrodyne shareholder list and the UCB working list is 1171 Creekwood Drive, San Jose. In his deposition testimony, Hall stated that this address was correct at the time of the mailing (Exhibit 10, Deposition Testimony of Robert Hall, August 26, 1982,

p. 3). There is no evidence his notice of merger was returned as undeliverable.

### WALTER J. HARRINGTON

The address for Walter Harrington shown on both the Bicrodyne shareholder list and the UCB working list is 835 Page Mill Road, Palo Alto. Harrington has stated this was his correct address at the time of the mailing (Deposition Testimony of Walter J. Harrington, August 27, 1982, p. 2). There is no evidence that his notice was returned as undeliverable.

### DALE DE BEAUCLAIR

Dale De Beauclair's address is shown on both the Bicrodyne list and the UCB master list as 1325 *Mills* Street #5, Menlo Park. He has stated that his proper address is 1325 *Mill* Street #5 (Exhibit 12, Deposition Testimony of Dale De Beauclair, August 18, 1982, p. 4–5). There is no evidence his notice of merger was returned as undeliverable. The omission of the "s" in the listed address is not sufficiently significant to cause that address to be characterized as improper or erroneous.

### RALPH CALCATERRA

The address for Ralph Calcaterra is shown on the Bicrodyne shareholder list and the UCB working list as 202 Atherton Avenue, Atherton. He has stated that this was his correct address at the time of the mailing. (Deposition of Ralph Calcaterra, September 18, 1982, p. 23). There is no evidence his notice of merger was returned as undeliverable.

In view of the finding that UCB mailed notice to all shareholders on July 1, 1977, and the uncontradicted evidence that UCB mailed the notice of merger to each of the above mentioned shareholder's proper address of record, their failure to perfect their appraisal rights precludes each of them from asserting those rights in this action.

### CONCLUSION

Accordingly, the Court concludes that the corporation's obligation to notify these shareholders of the proposed merger under § 1110(i) was discharged, and the shareholder's failure to tender the shares within the time allowed is not excused.

The claims of these shareholders to appraisal rights must therefore be dismissed.

IT IS SO ORDERED.